Good morning, may I please the court. My name is Brian Walsh and I'm appearing on behalf of the Appellant Countrywide Home Loans. This dispute is about attorney's fees and it comes to this court as a bit of a puzzle. The reason I say that is Ms. Hoopai, the debtor, took an appeal to the Bankruptcy Appellate Panel from the Bankruptcy Court's decision that awarded attorney's fees to my client Countrywide. And in that appeal, she conceded that under federal law, Countrywide was entitled to recover at least some attorney's fees. But she came away with a decision from the BAP that was based entirely on state law that said Countrywide was entitled to no attorney's fees. Subject to your questions, I'd like to address what I think are the three principal issues here. Preemption, the reasonableness of the fees, and who was the prevailing party for purposes of Hawaii law. On the subject of preemption, it's been the law of this circuit for more than 20 years that Section 506P of the Bankruptcy Code preempts state law on the subject of attorney's fees to be allowed to an oversecured creditor in a bankruptcy case. The 268 case from 19- Have you waived that argument, Counselor? No, Your Honor, I don't think we've waived that argument and here's why. This is an unusual set of facts because of an intermediate appeal. But the appellant in the bankruptcy appellate panel was Ms. Hohepie. She not only conceded but argued affirmatively in both of her briefs that Section 506P preempts state law. And she cited the same cases that we're citing to you today. This argument was raised in the district court as well. This argument was raised in the bankruptcy court. I mean the bankruptcy court, I'm sorry. In fact, when the initial briefing was done in the bankruptcy court, both parties focused entirely on federal law. Kalei law snuck in later in a motion for reconsideration by the debtor. But when the point was conceded and affirmatively argued by the appellant before the BAP, I don't believe there's any law that requires the appellee to affirmatively pile on and say, yes, absolutely, that is correct. Instead, what Countrywide did was take the point as conceded and then argue the decision on the basis that the bankruptcy court decided it. We did not say that 506B does not apply here. We said, like the bankruptcy court said, it doesn't really matter because we win either way. We win under Hawaii law. So you don't need to get to the issue of what 506B does here. So I don't think that the point has been waived on that rather unusual set of facts. But the bankruptcy appellate panel treated 506B as though it was simply a conduit for state law. If you can't recover fees under Hawaii law, you can't recover fees under 506B. That is not an accurate statement or application of the law as reflected in this court's precedents. Under a proper analysis, we submit that section 506B cannot coexist with Hawaii Code section 60714 because federal law provides that reasonable fees shall be paid to the lender. Hawaii law provides that reasonable fees shall be paid to the prevailing party. There's a direct conflict here, and in that scenario, state law has to give way. In fact, Judge Schroeder, you authored an opinion earlier this year on very similar facts involving the ADA and a parallel California state law. Let me understand this because there seems to be a lot of disagreement here about the prevailing party. What was the nature of the underlying dispute as you see it? The underlying dispute is this is a glorified collection action. I'm a bankruptcy lawyer. I like to think that bankruptcy has all this magic to it. But if you strip away the procedural overlay of bankruptcy, this is an attempt to collect on two defaulted notes and two defaulted mortgages. Countrywide began that process under state law through foreclosure. It was twice interrupted by bankruptcy filings. The first, a filing under Chapter 11 that was riddled with problems, as the bankruptcy court pointed out in its decision. The second, a Chapter 13 filing. It was filed three days after the foreclosure sale. But under a court of state law, as we now know after that issue was litigated, it was early enough to prevent the foreclosure sale from being effective. But if you strip away what was going on here, it's a collection action. And in a bankruptcy case or outside of a bankruptcy case, a secured creditor can't do any better. Well, it was never disputed that you were entitled to your secured interest. You were entitled to it no matter what. I think that's probably taking a little bit too narrow a focus. Were you oversecured? We were oversecured. To say that it was never disputed that we were entitled to be paid is probably taking a little bit too narrow a focus here. Because it was disputed that we were entitled to collect. It was disputed that we were entitled to foreclose. And when I say disputed, I mean we attempted to foreclose. We were prevented from foreclosing twice. And then the debtor argued specifically that state law makes – well, under state law, because of the failure to file the last piece of paper, the foreclosure sale was not valid. It did not transfer title to the Malavia Trust, the purchaser of the foreclosure sale. And so to say that there's no dispute that the foreclosure sale was valid, there's no dispute that the loan was in default, that's taking – Well, when she filed the second bankruptcy proceeding, it was pretty clear that she conceded that you were entitled to be paid. She put in her schedules that she owed the money. That's correct. She did put that in her schedules. And she planned to pay it by completing the sale to Smith. She did say in her petition, without any supporting evidence at that time, that she had a contract to sell the property. That evidence – there was no evidence of that sale that came to light until after everything was far too far down the road for that to make any difference. Well, what was the debtor trying to do here? Well, the debtor – once we get past the efforts to prevent foreclosure, when we get into bankruptcy, what the debtor was trying to do was to sell her house under the auspices of a Chapter 13 bankruptcy plan. But what happened first was that she filed a petition with no supporting documents for another week or so. She filed it three days after a foreclosure sale. And she said, I plan to sell my house. That's all. We just have the one statement. I'm going to sell my house, and I think it can close soon. Countrywide responded reasonably under the circumstances by saying, we'd like relief from the automatic stay.  The foreclosure sale is done, Judge. All we need to do is to get that property sold, and we'll go away. We won't be a party in the bankruptcy case anymore, obviously, at that point. I knew the bankruptcy court wasn't going to be too anxious to do that. Being a bankruptcy lawyer, you know the bankruptcy court saw in that property more than $159,000, so therefore they wanted to distribute it to all the creditors and not just you. I think we can say, Your Honor, if the court knew that that equity was there, the court would want to distribute it to other creditors. But nobody knew that that equity was there at the time. Well, they did suggest, however, in the bankruptcy papers, that they had a sale for $300,000. Suggestion is a good word, Your Honor. I put that because that's what you're suggesting. Yes, that's right. Let me look at 506B. Certainly. If I look at 506B, it says, To the extent that an allowed secured claim is secured by property, the value of which is greater than the amount of such claim, there shall be allowed to the holder of such claim interest on such claim and any reasonable costs, fees, or charges provided under the agreement or under state statute. Now, as I understand the argument, what you're suggesting is that our case in court eliminated whether we have to go to the state statute. It's really said we're only looking for the bankruptcy 506B. That's what it says, and 506B overtakes the state statute, so therefore bankruptcy fees will be allowed. However, this says provided under the agreement or the state statute. Now, does the agreement that you have with the particular party here have a clause in there that these fees will only go to the prevailing party? I need to answer a preliminary question, Your Honor. I didn't ask a preliminary question. Does this agreement have any clause in it that suggests that fees only go to the winning party? I do not believe it does, Your Honor. Well, when I read the BAP opinion, I didn't see it. I couldn't find any contract in the record, so I didn't see it in the contract. So that's my worry because it seems to me you yell, Court is a preemption, therefore it's done. We don't have to worry about the state law. One could very easily read this to suggest if the state statute only gave it to the prevailing party, you'd have to be the prevailing party in any event. But what you're really arguing is whether you're the prevailing party or not, you're entitled to the fees under 506B simply because you're oversecured. And the fees were reasonable. And whether they're reasonable or not, I appreciate your argument, but I'm not sure that anybody really focused on that argument below. I think the issue is the or state statute language that you referred to, Your Honor, that was added to the Bankruptcy Code in 2005, and it is not applicable to this case. So the statute as it read when this case was filed said provided for under an agreement. The agreement does provide for the secured lender to be paid its attorney's fees. So all we really are looking at then, if we go under this statute and it is preemptive, we're looking at what is the reasonability of the fees. And did the Bankruptcy Court really ever talk to that? Very clearly, Your Honor. At some length. The Bankruptcy Court. The Bankruptcy Court. I'm sorry, yes. The Bankruptcy Court talked about it at some length. The BAP glanced. The BAP didn't talk about it at all. They basically bounced it back. Yes. They said some of the fees seem high. That's pretty much that. Well, my worry is that given the BAP and given what they've said, it looked to me like what they were saying is bouncing back to the Bankruptcy Court to determine a reasonability for the fee. And all I'm asked to determine is, okay, now on appeal, if, in fact, I do have an overriding provision under 506B, which you're suggesting, and if, in fact, court and other cases like it in my court say that's overtakes Hawaii law, and if, in fact, you haven't waived your issue, which I ask you to begin, then I only have reasonableness in front of me. If I still want the Bankruptcy Court to determine the reasonableness, I can remand for that. Well, I think the Bankruptcy Court has already decided reasonableness. I appreciate your argument. Yes. But I could. If I don't agree with that argument, I could remand. If you don't agree that the fees are reasonable, you could set a different number or remand. So your view is the BAP went wrong. I think the BAP went wrong by saying that Hawaii law, saying right up front, Section 506B does not allow a claim if it's unenforceable under state law. And that is not a correct statement of the law. Do you contend that under 506B you're entitled to fees for the entire period, pre-confirmation and post-confirmation? We do contend on the unusual facts of this case that we are entitled to pre-confirmation and post-confirmation fees because there was a stay pending appeal of the Malahia decision. And so the confirmation, as a practical matter, was not a significant event in this case. However, we did get paid not long thereafter. We got paid as of December, I don't know, January 31, 2006. The plan was confirmed in February of 2005, which would be the normal way under the courts, which say that's when we stop your fees. But even if we didn't go there, you were paid out as of January 31, 2006. Right. We believe that when the property was sold and Countrywide was paid, that was when this plan became effective. That was the only time there was any legal significance to the confirmation of the plan because the only thing the plan said is the house would be sold and the proceeds would be paid to Countrywide. But that's the effective date of the plan. That is our view, the effective date of the plan. No, the effective date is confirmation of the plan. In most cases, the effective date in the Chapter 13 case would be the date of confirmation. But in this case, to say that the plan was effective, I think, is probably not correct because nothing happened. There was a stay pending appeal. The plan process simply sat there, waited for that appeal to conclude, and the property to be sold. And it's when the property was sold, the plan became effective. That's when the relationship between the parties really changed. You have about a minute left. Thank you. I'd like to reserve that. Thank you, Your Honor. Good morning, Your Honors. I'm Bradley Tam, appearing on behalf of Appali Ho'opai with me on brief and at the council table is my partner, Lisa Schultz. With regard to the appeal, which is presently before the Court, it is extremely important to remember what the BAP decided and what the BAP didn't decide. The BAP didn't decide reasonableness of Countrywide's fees. It left that as an open question. The BAP also didn't decide many other issues. The Ho'opai's appeal was an appeal of a tripartite relationship of parties. The BAP only decided two things, and those two things are that state law controls and that Countrywide was not the prevailing party. If this Court disagrees with the BAP on either of these issues, it should remand the case back to the BAP so that the BAP can finish deciding Ho'opai's appeal and all the issues that remained undecided. Well, my worry is that nobody talked to the BAP about 506B and its relationship to this particular issue and that they were deciding this issue without the overlay of 506B. All of you having decided that that was what it was, and therefore they decided, if you will, post-confirmation issues or issues that would happen where 506B is not appropriate to be included because the BAP can't go outside of our decision in court and suggest that 506B is not determinative of this particular action, can they? Judge Smith, I would respectfully disagree. In Ho'opai's appeal before the BAP, Ho'opai was the appellant, and Ho'opai dedicated a major portion of her appeal or a significant portion of her appeal to the proposition that we believe that the bankruptcy court erred in applying state law across the board. Ho'opai argued 506B. Ho'opai argued that 506B applied to the pre-confirmation fees and that post-confirmation under Wright v. Wade doctrine that these attorney's fees should be decided under state law. This was Ho'opai's appeal. In response to Ho'opai's appeal on 506B, Countrywide repeatedly supported the bankruptcy court. They won. They can't preserve their victory. Now I stand here today and I listen to appellate Court Countrywide arguing Ho'opai's appeal before the BAP, and I may not be a seasoned appellate attorney, but everything I know about the appellate process is stood on its head right now. Countrywide has said that they don't have to pile on. Well, what I was taught in law school and what I've learned subsequently is I have to preserve issues, and if I believe something might be relevant on appeal, I have to preserve it. I've had a difficult time struggling with this. You know, there's exceptions. I mean, to the extent you might be suggesting they waive any of this, there are exceptions to the waiver doctrine. If it's a purely legal issue and we can deal with it, we should. I understand that, Your Honor, but one of the reasons for the waiver doctrine, one of the reasons for these jurisdictional requirements and estoppel and everything else is to help eliminate piecemeal litigation, and what we've done is we've just created more piecemeal litigation. I mean, if I used your same argument on you, you ought to be up here arguing exactly what they've argued. I mean, that's what you say you argued to the BAP, so why aren't you arguing it here? Well, Your Honor, an appellant gets an opening. Because I don't want to anymore. I won. No. I'll be candid with you, and I'll admit that is a consideration. Importantly, from a jurisdictional standpoint, an appellant gets an opening brief and gets a reply, an oral argument. The appellant gets to make their statement first, and then they get to comment. We had the appeal before the BAP. We argued, but you're not reading our appellant's opening brief and our reply that we submitted before the BAP. These are our issues. We didn't have a proper opportunity to develop them here before the Ninth Circuit Court of Appeals. That's why this whole thing's been turned upside down. The independent review standard, I think, is great when the litigant loses, takes it on an intermediate appeal, loses, and then takes it on to the Ninth Circuit, because the process is maintained. But here, I think the only ---- To the extent they're reasonable. To the extent they're reasonable. And then post-confirmation, why law applies and who's the prevailing party, as Judge Schroeder has been asking. And there, the BAP was all in your favor. I think I would be comfortable with that. Well, I hope so. Well, I hope so. It seems to me that's exactly what we have to do. And therefore, you would win anything post-confirmation because you're the prevailing party. And we're stuck with CORD. Not stuck because we wrote it. We love it. We're appropriately applying CORD because that's our law. That's right. And we're stuck with travelers. And the only kind of issue that's, you know, that's kind of in dispute. Your Honor, I do have a question.   Well, I think the difference between the two is that if you say, well, your opponent says, and your court, they get pre-confirmation fees up until the effective date of the plan. He says, well, the plan wasn't effective until the sale actually was completed, which was years later. So we get our fees all the way up to that date. I wonder on that issue as far as confirmation date being the effective date. The bankruptcy appellate panel recently ruled in the in-rate PAC case 378-BR-257. Confirmation date. What counsel seems to be doing is arguing the consummation of the plan as opposed to the effective date. Instead of confirmation. Confirmation. And let's look at the delays that were caused here. Paul Pye filed the plan. She just didn't kind of mention in her plan that she wanted to sell the house. She said she's got to sell. She's in escrow. It's $300,000. And most importantly, she expects to close on November 30th. Countrywide filed this motion for relief from stay on November 3rd. That guaranteed that we wouldn't be able to close. That threw a monkey wrench into the whole thing. Yet Countrywide, in its reply brief, repeatedly accuses Paul Pye of causing delays. All Paul Pye wanted to do was sell her house, pay off Countrywide, pay off her creditors, and walk away with some modicum of the equity that she had developed in her home. And I think the court can also recognize it in the context of the grand scheme of things. 2004 this occurred. 2004 was in the period of time where property values were scaling. Nothing was ever really at risk here. We never disputed anything. In fact, Countrywide, in their memorandum in support of the motion for relief from stay, which you will find at Hall Pye's excerpts of the record, page 92, paragraph 7 of Countrywide's motion says that Hall Pye does not dispute the default of Hall Pye's loan or the validity of the nonjudicial power of sale foreclosure. Contrary to counsel's representations here this morning where he says Hall Pye disputed the foreclosure, Countrywide's own admissions on the motion for relief from stay acknowledge that we don't dispute the foreclosure. What we're trying to do is do the right thing, and that's what bankruptcy was here for. Let me ask you one last question. I have one last question for you. Thank you, Your Honor. Let's assume that that sort of approach prevailed. Do we still need to remand to the Bankruptcy Court to do the reasonableness analysis for pre-confirmation fees, post-confirmation fees, and to address Ms. Hopeye's motion for attorney's fees under the Hawaii statute? Well, Your Honor, that depends upon how you're going to rule on the reasonableness. Well, what he's really saying is, did the Bankruptcy Court do enough already on that, or do we need to remand to determine it? Yes, Your Honor. One of the things that I didn't care for in the BAP made a comment about the 25 percent rule of Hawaii law. The 25 percent rule on actions under contract is limited to where someone is seeking a monetary judgment. Here, it was basically more in the lines of a declaratory relief case. The Hawaii Supreme Court ruled in a case called DFS. I don't remember the citation right off the top of my head, that in a declaratory relief action, there is no cap on attorney's fees because there's nothing to cap. You're not seeking a monetary judgment. And if this court was to rule that Hopeye, under travelers and in accord with court, gets these post-petition, post-confirmation attorney's fees, I would have a problem if the court argued about that or included a 25 percent limitation as suggested by the BAP. I don't believe that applies. I think there's so many other legal issues that abound here. Also, there's the question as to whether, as to the liabilities, the Malahia Trust, and a few other issues that were raised on appeal. I just don't know if this thing can really be completely disposed of by the Ninth Circuit. So on this reasonableness and on her fees and whatnot, that may need to go back to the bankruptcy court. We would prefer it went back to the BAP. Well, I suppose it would be remanded, though. I didn't know that we remanded the BAP. I'm the new guy, though, non-promoto. You can help me. You can tell the BAP to send it to the bankruptcy court. I thought in both DeRoche and in Travelers, the Ninth Circuit remanded back to the BAP, and the BAP remanded to the trial court. I think that was it. Okay. And the main reason is reasonableness was fully briefed to the BAP. And it looks like the BAP was prepared to rule on it. They gave some strong indications toward it. This could go back to the BAP. They could close it out based upon the briefings there. But we probably wouldn't even need oral argument anymore. That, I think, would be the advantage. We haven't briefed it here. We haven't briefed reasonableness here before this court. And I don't get to reserve anything, but I think I've said enough. Thank you. Thank you, Your Honor. I'd like to briefly address the notion, if 506B applies pre-confirmation in Hawaii law post-confirmation, I think the focus then has to be what did Ms. Hopai prevail on post-confirmation? That's the only sphere of influence of Hawaii law under that structure. What did she prevail on post-confirmation? Post-confirmation, she attempted to short pay countrywide. And she was not permitted to do that by the bankruptcy court. Let me ask you, let me stop you right there. Yes, Your Honor. Why are we only looking at what did she prevail on post-confirmation? It seems to me that what did she prevail on throughout the litigation is the subject. And the only reason why we are taking out of that what you have in pre-confirmation or whatever fees you have is because of this 506B, if you will, preemption. So we're really looking at the whole, because the back was pretty clear. She is the prevailing party. Other than in 506B situations. Your Honor, we think we're the prevailing party if you look at the entire case also. And I mentioned that in my opening, and it's fairly thoroughly covered in our brief. But I don't think you can, I don't think the notion of 506B preemption makes a whole lot of sense. To say it preempts something, but then you allow state law to come in through the back door and really govern the entire situation. Well, I'm not governing the entire situation. You just suggested that we're only to look at those facts which happened post-confirmation. I'm suggesting the back was pretty clear. It's all the facts if we didn't have a preemption that would determine those particular situations. So why do we only do it post-confirmation facts? Well, because I think it would undermine the notion of preemption to say that although federal law controls for a certain period of time, when you get to another period of time and state law controls, you look at all the same things that happened during the period of time when federal law controls. I don't think that makes for effective preemption. It makes preemption somewhat of a hollow concept if you look at it that way. Thank you. That's all I have. Thank you. Thank you. We would request that the decision would that be reversed. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Yokoyama v. Midland National Life Insurance.
judges: Schroeder, Paez, Smith